978 So.2d 406 (2007)
Emmett WORLEY
v.
TOWN OF BRUSLY.
No. 2007 CA 0572.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
Writ Denied March 14, 2008.
*407 Marvin Gros, Donaldsonville, LA, for Plaintiff/Appellee, Emmett Worley.
Christopher Moody, Hammond, LA, for Defendant/Appellant, Town of Brusly.
Before GAIDRY, McDONALD and McCLENDON, JJ.
McDONALD, J.
This case involves an elected official working for a town that purchased workers' compensation for its elected officials. He was injured at work, then filed for *408 indemnity benefits over two years later, after a second surgery and near the end of his term in office. The workers' compensation judge found that his salary, to which he was entitled by statute despite his inability to work, amounted to "wages in lieu of compensation" to interrupt prescription on his workers' compensation claim. We affirm.

FACTS
Mr. Emmett Worley, Police Chief of the Town of Brusly, filed a disputed claim for compensation on December 13, 2004, asserting that he was injured at work on August 1, 2002 while moving a filing cabinet.
The Town of Brusly filed an exception of prescription, asserting that after the accident, Mr. Worley continued to work as Chief of Police until he lost his campaign for re-election, with his term ending December 31, 2004. The Town of Brusly asserted that Mr. Worley's claim for indemnity benefits was prescribed.
After a hearing, the workers' compensation judge denied the exception of prescription. After trial on the merits, the workers' compensation judge ruled in favor of Mr. Worley, finding that the Town of Brusly had paid Mr. Worley "wages in lieu of compensation," and thus his claim had not prescribed. The workers' compensation judge ordered that the Town of Brusly pay Mr. Worley temporary total disability (TTD) benefits in the amount of $398.00 per week commencing January 1, 2005, and continuing until further order of the workers' compensation judge; attorneys' fees in the amount of $10,000.00; penalties in the amount of $2,000.00; and ordered that the Town of Brusly pay all costs. The Town of Brusly filed a motion for new trial, which was denied. The Town of Brusly suspensively appealed the judgment and makes the following assignments of error:
1. The [workers' compensation judge] erroneously held that the claimant's right to indemnity benefits had not prescribed where the claimant continued to earn his salary after the accident and therefore his wages are not considered "wages in lieu of compensation."
2. The [workers' compensation judge] improperly held that the defendant-employer was not allowed to an offset of TTD benefits awarded to the plaintiff where plaintiff received disability benefits from a disability benefit plan funded in part by the employer.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, the Town of Brusly argues that the accident occurred on August 1, 2002, and Mr. Worley did not file a claim for indemnity benefits until December 13, 2004. Thus, the Town of Brusly contends the claim is prescribed on its face, and that Mr. Worley continued to earn his salary as Chief of Police after the accident, therefore, his wages cannot be considered "wages in lieu of compensation."
The workers' compensation judge made a factual determination that Mr. Worley received "wages in lieu of compensation," after his accident, which determination is subject to a manifest error review. See Ortis v. Ortco Contractors Inc., 00-1460 (La.App. 1 Cir. 9/28/01), 809 So.2d 300, 302.
The La. Const. Art. 6, § 12, provides that the compensation of a local official shall not be reduced during the term for which he is elected. Further, La R.S. 33:404.1 provides in pertinent part:
The board of aldermen shall by ordinance fix the compensation of the mayor, aldermen, clerk, chief of police, and all other municipal officers. The board *409 of aldermen may by ordinance increase or decrease their compensation and the compensation of any nonelected municipal officer and may increase the compensation of other elected officials. However, the board of aldermen shall not reduce the compensation of any elected official during the term for which he is elected.
Louisiana Revised Statutes 23:1209 provides:
A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (2), (3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident. [Footnote omitted.]
Louisiana Revised Statutes 23:1209 A provides three prescriptive periods for the filing of compensation claims: (1) one year from the accident when the injury is immediately manifest; (2) one year from the last payment of compensation benefits (three years for supplemental earnings benefits); and (3) one year from the time the injury develops, but not more than two years from the accident, when the injury does not result at the time of or develop immediately after the accident. Daisey v. Time Warner, 98-2199, (La.App. 1 Cir. 11/5/99), 761 So.2d 564, 566-567.
Mr. Worley cannot claim benefits under the first prong because he did not file his claim for indemnity benefits within one year after the accident occurred. He was injured on August 1, 2002, and made a claim for indemnity benefits on December 13, 2004.
Under the second prong, for that prescriptive period to apply, he had to have already received indemnity benefits. The workers' compensation judge found that he received wages "in lieu of compensation" after his injury determining that he had received indemnity benefits, and filed suit within a year of the last payment of benefits, thus his suit had not prescribed.
Under Louisiana law, prescriptive statutes are to be strictly construed against prescription and in favor of the claim that is said to be extinguished. Ortis, 809 So.2d at 302.
In Cheatham v. Morrison, Inc., 469 So.2d 1219, 1220 (La.App. 1 Cir.1985) this court found as follows:
"The basic test is whether the wages paid subsequent to the injury were actually earned. The mere fact that the duties before and after the accident were similar or dissimilar, heavier or lighter, is relevant but not determinative of the issue. And whether the wages were actually earned is determined by the facts and circumstances of each particular case." Peck v. Orleans Levee Board, 353 So.2d 424, 426 (La.App. 4th Cir.1977); writ denied, 355 So.2d 259 (La.1978). Plaintiff admitted that although *410 her doctor discharged her for light duty, she performed the same work as before and that she actually worked for the paycheck she received. Therefore, she did not receive wages in lieu of compensation.
This court further found in Ortis, 809 So.2d at 301:
Prescription is interrupted by the payment of wages in lieu of compensation when suit is filed within one year of final wage payment. Lester v. Rebel Crane and Service Company, 393 So.2d 674, 676 (La.1981). Wages in lieu of compensation are deemed applicable when services rendered by a disabled employee after an accident are not commensurate with the wages paid and the employee does not actually earn all of his pay. Cheatham v. Morrison, Inc., 469 So.2d 1219, 1220 (La.App. 1st Cir.1985). The underlying test is whether the wages paid after the accident were actually earned. Id; Peck v. Orleans Levee Board, 353 So.2d 424, 426 (La.App. 4th Cir.1977), writ denied, 355 So.2d 259 (La.1978). The burden of proof that prescription has not tolled lies with the claimant. Bledsoe v. Willowdale Country Club, 94-234 (La.App. 5 Cir. 9/27/94), 643 So.2d 1302, 1304.
In the Ortis case, the plaintiff was the sole owner, president, and salaried employee, as a managing salesman, of Ortco. This court compared his pre-accident and post-accident job performance, finding his services as a managing salesman were patently disproportionate to his wages, and determining that the workers' compensation judge erred in her determination of a factual conclusion that the plaintiff, as an employee, received wages commensurate with his performance. This court reversed the decision of the workers' compensation judge and found that the continuous receipt of the same sum of wages by Mr. Ortis interrupted the commencement of the prescriptive period until the payments by Ortco ceased.
In the present case, the workers' compensation judge found in his reasons for judgment denying the exception of prescription as follows:
Claimant has proven a clear distinction as to the duties he was performing before August 1, 2002 and the duties that he was relegated to after the accident. Despite Mr. Worley not being able to perform his full duties after August 1, 2002, he continued to receive his full pay. That's exactly what the wages in lieu of compensation interruption is all about. I understand that a distinction is trying to be drawn because this man was an elected official, but I'm not aware of any laws in the State of Louisiana that give elected officials any lesser rights than a private employee. In fact, if you look at most statutes, you're going to find that most elected officials have additional rights.
I can't see how the argument can hold true, that an elected official who is required by law to receive his full salary should not be able to take advantage of the wages in lieu of compensation interruption that is provided by law. The court doesn't see that any type of specific agreement is required by employees or an employer to effectuate that kind of interruption.
The testimony of the claimant was uncontradicted, and in fact, corroborated by the Town Clerk of Brusly. The court finds that clearly the claimant has met his burden of proof in proving the interruption based on wages in lieu of compensation and the exception is denied.
Mr. Worley testified about his work following the accident and both surgeries in part as follows:

*411 Q. Mr. Worley, let's talk about prior to August 1, 2002. That was the date when the filing cabinet fell on you and you had your injury; is that correct?
A. Yes, sir.
Q. Let's talk about before that. How long were you a Police Chief prior to that?
A. That was my second year.
Q. Tell the court, if you will, what were your daily functions as Police Chief; what did you do?
A. My day started at 7:30 or 8:00. I would go in and take my messages that I had from the night before. I would go over all the reports that were written the night before and go through those. I would set up appointments to meet with people, and then meet with them. There was just various office work and dealing with the public as they came in.
Q. Prior to August 1, 2002, did you actually participate in the arrest of individuals when need be?
A. Prior to, yes, sir.
Q. You actually did investigations, going out on the streets?
A. Yes.
Q. Did you actually work at night sometimes?
A. I was on call 24 hours. I was called out several times at 2:00 or 3:00 in the morning.
Q. Those were your daily functions until the accident on August 1, 2002?
A. Right.
Q. August 1, 2002 happens. You took off a few days after the incident, correct?
A. Yeah.
Q. Eventually you had surgery in March of 2003; is that correct?
A. I'm not sure it was March.
Q. May, May 2003. Let's talk about from August 1, when you took off a few days and went back. Were you able to go back to your full duties after the incident with the filing cabinet?
A. No, sir.
Q. Let's talk about what you could not do when you went back to work after August 1, 2002. Did you go in at the same time every morning after that time?
A. No, sir.
Q. What time did you go in then?
A. I normally went in about 10:00 or 10:30.
Q. How long did you end up staying at the office?
A. I would stay until noon and once my secretary had her lunch break, I would go back home.
Q. In comparison to what you did before, what is the difference in hours?
A. I averagedbefore the accident, I would work eight, ten, or twelve hours a day.
Q. And after the accident?
A. After the accident I averaged two or three hours a day.
Q. After the August 1, 2002 accident, were you able to make any physical arrests on your own?
A. No, sir. I would have to have somebody do it for me.
Q. Did you go out at night and supervise any investigations or arrests after August 1, 2002?
A. No, sir.
Q. Why not?
A. I wasn't able to.
Q. Okay. Basically, you delegated this to your assistants in the department; is that correct?
A. Correct.
Q. After you had your surgery in May 2003, you said that you stayed out close to three months; you didn't go to the office at all?

*412 A. Right. Actually, it was predicted as six months of recovery, but I think it was only four months.
Q. What type of surgery did you have?
A. Dr. Thad Broussard had gone in and drug back two of the discs that had bulged because of the accident. He trimmed them back and made a small groove to place the nerve that was suppose to go there and was hoping to put the nerve into the groove and have it stay there.
Q. You say you took off completely for approximately three months. You didn't go in at all; is that correct?
A. That's correct.
Q. After three months, tell the court what activities you did after that.
A. Again, it was like I said, sign payroll. If somebody wanted to see me, we'd set an appointment date or time and that was basically about it.
Q. You workedyou did some work from your house; is that correct?
A. Yeah. I had the police radio, telephone, and I had the two way.
Q. Your second surgery was November 2004; is that correct?
A. Correct.
Q. Did you get approval for that surgery right away? Was it recommendedhow long was it recommended after the first surgery that you have the second surgery?
A. After the first surgery didn't work and as it kept getting worse and worse, Dr. Broussard sent me to Dr. Pribil in New Orleans. He took X-rays and this sort of thing and came back and said it was going to have to be redone. What happened was the discs had actually deteriorated; they were no longer there.
Q. Did you[r] condition get progressively worse after that?
A. Definitely.
Q. Did you[r] activities curtail a little bit more after that?
A. Everything came to a standstill.
Q. It was your testimony earlier that when the election was heldwhen was the election?
A. September. The qualifying was in August and the election was in September.
Q. It's your testimony that you did not actually campaign at all in that race, correct?
A. I never was able to get out of bed.
Q. Okay. Then in November of 2004 you had the surgery; is that correct?
A. That's correct.
Q. And you didn't go back to City Hall at all?
A. No.
Q. You received your regular check every two weeks that you normally got?
A. Yes, sir.
The facts of this case show that after the accident, Mr. Worley missed three or four days of work, then returned to his job, working on a more limited basis for two or three hours a day. At that time, although his workday was limited, Mr. Worley was able to delegate duties and run his office.
Then, after his first surgery, in May of 2003, he did not return to work for approximately three months while he recovered. He stayed home, and did some work from his house, such as signing payroll checks. During this time period, we find he was paid "wages in lieu of compensation."
However, he went back to work after this three-month recovery period. Thereafter his condition worsened, and he underwent a second surgery in November of 2004. Afterward, he was not able to get out of bed and did not return to City Hall at all. He continued to receive his paychecks through December 31, 2004. During this time period after the second surgery, we find he was paid "wages in lieu of compensation."
*413 Thus, between the November 2004 surgery and December 31, 2004, the end of his elected term, Mr. Worley received "wages in lieu of compensation" and the workers' compensation judge did not manifestly err in finding that the claim for compensation, filed December 13, 2004, was timely, as Mr. Worley was being paid "wages in lieu of compensation" at that time.

ASSIGNMENT OF ERROR NO. 2
In this assignment of error, the Town of Brusly asserts that the workers' compensation judge erred in not giving an offset of TTD benefits because Mr. Worley received disability benefits from a disability benefit plan funded in part by the Town of Brusly. This issue was raised in the motion for new trial, which the workers' compensation judge denied. The workers' compensation judge found the fact that Mr. Worley was receiving disability retirement benefits, rather than regular retirement benefits, was evidence which the Town of Brusly could have discovered, with due diligence, before the trial. See La. C.C.P. art.1972(2). We find no abuse of discretion by the workers' compensation judge in the decision to deny the motion for new trial.[1]
Thus, the judgment of the workers' compensation judge is affirmed, and costs are assessed against the Town of Brusly.
AFFIRMED.
McCLENDON, J., concurs with the result received by the majority.
NOTES
[1] While it is troubling that Mr. Worley stated at trial that he was receiving regular retirement benefits rather than disability retirement benefits, we still cannot say the workers' compensation judge abused his discretion in finding that the Town of Brusly could have, with due diligence, discovered this fact prior to trial.