ROBERT M. MURPHY, Judge.
| ¿Claimant, Andres Garcia, appeals a judgment rendered by the Office of Workers’ Compensation, District 7, dismissing his claims against his employer, HICO, Inc., and Louisiana Home Builders, SIF for indemnity benefits, penalties and attorney’s fees. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On February 26, 2010, Andres Garcia fell from a ladder while painting sprinkler pipes within the course and scope of his employment with HICO, Inc. The ladder shifted when he was eight to twelve feet above the ground, causing him to fall onto his feet. Mr. Garcia was transported to the emergency room of West Jefferson Medical Center where he complained of *283 pain in his left ankle and leg and left upper chest. In the emergency room, he saw Dr. Michael Volner who took x-rays, administered morphine and noted abrasions to Garcia’s right inner biceps and left chest wall. The x-rays revealed a left ankle fracture; the CT scan, however, |sshowed no acute injury and degenerative disc disease at C5-6 and C6-7.
Mr. Garcia testified that West Jefferson Medical Center referred him to Dr. Alexis Waguespack of the Bone and Joint Clinic for further treatment. Because Dr. Wag-uespaek no longer worked at the Bone and Joint Clinic, the clinic referred him to another physician at the clinic, Dr. Daniel J. Gallagher. According to the medical records introduced at trial, Mr. Garcia first treated with Dr. Gallagher on March 1, 2010, three days after the accident, complaining of pain in both shoulders, his lower back, and left ankle. Dr. Gallagher diagnosed Mr. Garcia with a left ankle fracture, as well as lumbar and shoulder sprains. During this visit, Dr. Gallagher opined that the lumbar and shoulder sprains should heal without permanent disability.
On March 5, 2010, Dr. Gallagher performed an open reduction and internal fixation of Mr. Garcia’s left ankle. On April 12, 2010, Dr. Gallagher evaluated Mr. Garcia following his surgery. He noted that Mr. Garcia’s ankle was healing well and released him to perform light duty work with minimal standing and walking. On April 26, 2010, Mr. Garcia’s counsel sent a letter to Barbara Gilchrist, the adjuster assigned to Mr. Garcia’s claim, requesting a consultation with a Spanish-speaking orthopedist, Dr. Luis Espinoza. Ms. Gilchrist testified that she did not initially authorize Mr. Garcia’s request to change his physician to Dr. Espinoza because Mr. Garcia had signed a Choice of Physician form on March 8, 2010, selecting Dr. Gallagher as his choice of physician.
Oh May 10, 2010, Dr. Gallagher evaluated Mr. Garcia and issued a report regarding his findings. He concluded that Mr. Garcia’s left ankle fracture had healed and he instructed Mr. Garcia to stop using a cane and to return to light duty work with no climbing ladders or lifting more than 30 pounds. During this visit, Dr. Gallagher noted that Mr. Garcia complained of pain in his left ankle, left knee, |4low back and both shoulders. He ordered an MRI of Mr. Garcia’s shoulders, back and knee and noted that Mr. Garcia would be released at his next visit, if no acute trauma or injury is found in the MRI of his shoulder, back and knee. On July 29, 2010, Dr. Gallagher issued a report confirming that the MRI revealed no acute injury to Mr. Garcia’s shoulders, back or knee. Dr. Gallagher noted degenerative and chronic abnormalities in the MRI results. He again stated that Mr. Garcia was capable of performing light duty work activities, but noted that Mr. Garcia had no restrictions regarding his shoulders, back or knee.
Ms. Gilchrist testified that she authorized an examination with Dr. Espinoza on October 29, 2010, “to move the case forward,” even though she considered Dr. Gallagher to be Mr. Garcia’s choice of physician. Dr. Espinoza examined Mr. Garcia’s left ankle on November 9, 2010, and prepared a report on that same day, indicating that Mr. Garcia could return to moderate duty work as a painter. Specifically, Dr. Espinoza concluded that the ankle fracture had healed, but offered a cortisone injection to assist with Mr. Garcia’s complaints of pain. He also recommended an EMG and nerve conduction study to rule out nerve damage. Dr. Espinoza’s report indicated that he did not perform these procedures because he ended the consultation after Mr. Garcia became agi *284 tated when he told him that he had only been approved by the workers’ compensation carrier to evaluate Mr. Garcia’s ankle. Mr. Garcia offered no expert medical testimony at trial to clarify this issue.
In or about February of 2011, HICO retained Elier Diaz of Vocational Solutions, Inc. to formulate for Mr. Garcia a light level modified utility worker position. On February 25, 2011, Mr. Garcia filed a disputed claim for compensation seeking recovery for penalties and attorney’s fees based on the employer’s alleged failure to timely authorize a complete medical evaluation by | ;;Dr. Espinoza. Mr. Garcia further sought indemnity benefits as a result of the subject work-related accident, penalties, attorney’s fees, costs and interest.
On March 14, 2011, Elier Diaz, the vocation rehabilitation counselor, conferred with Dr. Gallagher to review the possibility of Mr. Garcia returning to light duty as a modified utility worker with HICO. Dr. Gallagher opined that Mr. Garcia had reached the maximum medical improvement and could perform the proposed light duty job.
HICO offered Mr. Garcia a light level modified utility worker position on May 24, 2011. On May 30, 2011, Mr. Garcia returned to work at his pre-injury wage and HICO terminated his temporary total disability benefits. At trial, Mr. Garcia’s supervisor, Victor Azocar, testified that Mr. Garcia did not even try to dip his paintbrush in a paint can when he reported to work on May 30, 2011. During cross-examination, Mr. Garcia confirmed Mr. Azocar’s testimony, explaining that in his opinion he was unable to perform the modified work on May 30, 2011, as a baseboard or trim painter due to pain, and he also confirmed that he did not even try to pick up a paintbrush at that time.
Ms. Gilchrist subsequently authorized Mr. Garcia to see another orthopedic surgeon, Dr. Charles Haddad, Jr., on April 17, 2012. Dr. Haddad diagnosed lumbar disease at L4-5 and L5-1, left knee pain, left hip bursitis, left ankle DJD, left ankle post fracture, left foot plantar fasciitis, right shoulder fibrosis and dyskinesia, right shoulder impingement and right shoulder AC joint DJD. He restricted Mr. Garcia to sedentary work duty.
The matter was tried on May 14, 2012. On July 14, 2012, the workers’ compensation judge (“WCJ”) denied Mr. Garcia’s claim for indemnity benefits, penalties and attorney’s fees. The WCJ found that Dr. Gallagher was Mr. Garcia’s original choice of physician; that defendants were not unreasonable in delaying the 1 (¡authorization for Mr. Garcia to change his choice of physician; that defendants did not limit the scope of Dr. Espinoza’s examination; that Mr. Garcia was offered suitable alternative employment within his physical restrictions; and that he did not prove he was unable to perform the position he was offered.
In addition, the WCJ concluded that defendants properly terminated Mr. Garcia’s temporary total disability benefits on May 30, 2011, noting that two of Mr. Garcia’s treating physicians, Drs. Gallagher and Espinoza, released him to light/moderate duty work. The WCJ further concluded that Mr. Garcia did not prove by clear and convincing evidence that he is physically unable to engage in any type of employment or that he was physically unable to performed the offered employment. Mr. Garcia now appeals.
ASSIGNMENTS OF ERROR
On appeal, Mr. Garcia raises four assignments of error: (1) the WCJ erred in finding appellees did not unreasonably delay medical treatment; (2) the WCJ erred in finding that Mr. Garcia is not entitled to supplemental earnings benefits; (3) the *285 WCJ erred in not awarding Mr. Garcia penalties, attorney’s fees and cost reimbursement; and (4) the WCJ court erred in not awarding Mr. Garcia interest on supplemental earnings benefits, penalties, attorney’s fees and cost reimbursement.
STANDARD OF REVIEW
The standard of review in workers’ compensation cases is “manifest error-clearly wrong” standard. Dean v. Southmark Const., 03-1051 (La.7/6/04); 879 So.2d 112, 118. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether or not the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Banks v. Indust. Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551, 556.
^DISCUSSION
In his first assignment of error, Mr. Garcia contends that his employer unreasonably delayed his medical treatment. In his third assignment of error, he contends that the WCJ erred in failing to award him penalties and attorney’s fees pursuant to La. R.S. 23:1201(F), as well as reimbursement costs under La. R.S. 23:1310.9. We will address assignments of error numbers one and three together.
A trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Foley v. Entergy Louisiana, Inc., 06-983 (La.11/29/06); 946 So.2d 144, 153 (citing Ferrell v. Fireman’s Fund Insurance Co., 94-1252 (La.2/20/95); 650 So.2d 742, 745). When the findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of fact, for only the fact finder is cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Johnson v. Lee, 10-439 (La. App. 5 Cir. 11/23/10); 54 So.3d 704, 706.
The Louisiana Workers’ Compensation Act provides that if an employee is treating with any physician “to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician.” La. R.S. § 23:1121(B)(2)(a); Snearl v. Kelly’s Indus. Serv., Inc., 06-0218 (La.3/17/06); 924 So.2d 138, 139. In its written reasons for judgment, the WCJ concluded that the testimony and documentary evidence presented at trial established that Dr. Gallagher was Mr. Garcia’s choice of physician/orthopedic surgeon. The court specifically noted that Mr. Garcia admitted that he was referred to Dr. Gallagher by the emergency room staff and not by defendants. Despite Mr. Garcia’s choice of Dr. Gallagher as his physician, the WCJ emphasized that defendants still authorized two additional choices of orthopedic surgeons, Dr. |sEspinoza and Dr. Haddad. The court noted that Mr. Garcia’s first request to see Dr. Espinoza came only days after Dr. Gallagher released Mr. Garcia for light duty work on April 12, 2010.
Dr. Espinoza issued a report on November 9, 2010, concluding that Mr. Garcia was capable of performing moderate duty work with respect to his ankle. Though Dr. Espinoza’s report indicated that he was only approved by the workers’ compensation carrier to evaluate Mr. Garcia’s ankle, Ms. Gilchrist testified that she “wholeheartedly” denied limiting Dr. Espinoza’s treatment of Mr. Garcia. Ms. Gilchrist testified that she authorized a subsequent visit with Dr. Espinoza, but was told by Dr. Espinoza’s office that he “did not do backs, and that he would not see that patient again.”
*286 Notably, the WCJ emphasized that Mr. Garcia did not offer any medical testimony of Dr. Espinoza, or any of other physician, to clarify the issue regarding the scope of Dr. Espinoza’s examination. Because the WCJ found Ms. Gilchrist to be a credible witness at trial, “particularly on the choice of physician issue,” we find no manifest error in the workers’ compensation court’s finding that defendants did not unreasonably delay or limit Mr. .Garcia’s medical treatment. Further, the WCJ held that defendants’ initial denial of Mr. Garcia’s request to change physicians to Dr. Espinoza was not unreasonable because Mr. Garcia made this request only after he had been released to light duty work by his first choice of physician, Dr. Gallagher, on April 12, 2012. Accordingly, we find that Mr. Garcia’s first assignment of error lacks merit.
For the same reasons, the WCJ refused to award penalties or attorney’s fees for unreasonably delaying or limiting the authorization of medical treatment by Dr. Espinoza. In his third assignment of error, Mr. Garcia contends that the WCJ erred in failing to award him penalties and attorney’s fees under La. R.S. 23:1201(F) for ^defendants’ (1) unreasonable delay in authorizing medical treatment; (2) unreasonable discontinuation of indemnity benefits; and (3) failure to reinstate indemnity benefits.
“The determination of whether an employer or insurer should be cast with penalties and attorney’s fees in a workers’ compensation action is essentially a question of fact subject to the manifest error or clearly wrong standard of review.” Redler v. Giorlando’s Rest. Corp., 07-658 (La. App. 5 Cir. 2/6/08); 979 So.2d 512, 516, writ denied, 08-0863 (La.6/6/08); 983 So.2d 925. Louisiana Revised Statute 23:1201(F), relative to the assessment of statutory penalties and attorney’s fees, provides that “failure to provide payment in accordance with this Section or failure to consent to the employee’s request to select a treating physician or change of physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty....” Section (F)(2) of La. R.S. 23:1201 provides that the penalties and attorney’s fees provisions shall not apply if the claim is “reasonably controverted.” Authement v. Shappert Engineering, 02-1631 (La.2/25/03); 840 So.2d 1181, 1187. In other words, “[t]he crucial inquiry in determining whether to impose penalties and attorney’s fees on an employer is whether the employer had an articu-lable and objective reason to deny benefits at the time it took the action.” Redler, 979 So.2d at 516.
Because we have determined that the WCJ did not err in finding that defendants did not unreasonably delay or limit Mr. Garcia’s medical treatment, we find no manifest error in its refusal to award penalties and attorney’s fees under La. R.S. 23:1201(F) on -that issue. Similarly, we find no manifest error in the WCJ’s refusal to award penalties and attorneys fees under La. R.S. 23:1201(F) for defendants’ termination of and failure to reinstate Mr. Garcia’s temporary total disability benefits. We note that Mr. Garcia’s first two choices of physicians |inreleased him to return to light or moderate duty work. Mr. Garcia returned to work on May 30, 2011 in a modified utility worker position at full pay. The defendants terminated his temporary total disability benefits on that date. Based on this evidence, and because Mr. Garcia did not offer medical evidence supporting his refusal to work, we find no manifest error in the WCJ’s determination that defendants properly terminated his benefits on May 30, 2011.
*287 Mr. Garcia also contends that the WCJ erred in failing to award him reimbursement of costs under La. R.S. 28:1310.9. Louisiana Revised Statute 23:1310.9 provides that if the workers’ compensation judge before which any proceedings for compensation ... have been brought, under the Workers’ Compensation Act, determines ... that the denial of benefits has not been based on a reasonable ground, the workers’ compensation judge shall assess the total cost to the unreasonable party.” Because two of Mr. Garcia’s treating doctors released him for light work duty, we find that defendants had a reasonable basis for denying benefits. After reviewing the record in its entirety, we find no manifest error in the WCJ’s failure to award penalties and attorney’s fees under La. 23:1201(F) and its failure to award reimbursement of costs under La. 23:1310.9.
In his second assignment of error, Mr. Garcia contends he is entitled to supplemental earnings benefits. Under Louisiana Revised Statute 23:1221(3)(a), the injured employee has the initial burden of proving by a preponderance of the evidence that the work-related injury rendered the injured employee unable to earn 90% of the injured employee’s pre-injury wages. Poissenot v. St. Bernard, Parish Sheriff’s Office, 09-2793 (La.1/9/11); 56 So.3d 170, 174; La. R.S. 23:1221(3)(a)(i). Once the employee establishes a prima facie case, the burden shifts to the employer who must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was goffered to the employee, or that the job was available in his or the employer’s geographic region. Banks, 696 So.2d at 556. “Actual job placement is not required.” Id. The burden then shifts back to the injured employee to prove by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely due to substantial pain. Battle v. Pilgrim’s Pride Corp., 41,056 (La. App. 2 Cir. 6/28/06); 935 So.2d 336, 341, writ denied, 06-1904 (La.10/27/06); 939 So.2d 1288; La. R.S. 23:1221(3)(c)(ii).
The WCJ found that both Mr. Garcia and defendants met their initial burdens, proving that Mr. Garcia was unable to earn 90% of his pre-injury wages and that defendants offered him a job within his physical restrictions, respectively. At this point, the burden shifted to Mr. Garcia to prove by clear and convincing evidence that he could not perform the job offered to him due to substantial pain. Although Mr. Garcia testified that he could not work on May 30, 2011 due to pain, the WCJ found Mr. Garcia’s testimony to be “self-serving at best.” The WCJ made a credibility determination that at trial Mr. Garcia was able to put his hand above his head while testifying without discomfort when he had testified that he could not dip his paintbrush in a paint can. The WCJ also found credible Mr. Azocar’s testimony that Mr. Garcia stated that he preferred to stay home and make less money than perform his job in a light-duty capacity.
We find that the WCJ’s factual findings and credibility determinations regarding Mr. Garcia’s claim for supplemental earnings are not manifestly erroneous. Based upon our review of the evidence, we find that Mr. Garcia did not prove by clear and convincing evidence that he is entitled to supplemental earnings benefits. Accordingly, we find that Mr. Garcia’s second assignment of error is without merit.
|iaIn his fourth assignment of error, Mr. Garcia contends that the WCJ erred in not awarding him interest on supplemental earnings benefits, penalties, attorney’s fees and cost reimbursement. Because we have found that Mr. Garcia is not entitled *288 to supplemental earnings benefits, penalties, attorney's fees or reimbursement costs, Mr. Garcia’s request for an award of interest on those amounts is moot.
In addition, Mr. Garcia contends- he is entitled to a separate award for attorney’s fees for the expenses incurred in bringing the instant appeal, in the event that this Court reverses the judgment of the workers’ compensation court. We affirm the judgment of the workers’ compensation court, therefore an award for penalties, attorney’s fees and costs is now moot.
CONCLUSION
After considering the entire record, we find the WCJ’s findings were reasonable and not clearly wrong. Accordingly, for the reasons stated herein, the judgment granted in favor of HICO, Inc. and Louisiana Homebuilders SIF, and against Andres Garcia is affirmed.

AFFIRMED