BROWN, Chief Judge.
_JjIn this workers’ compensation case, claimant appeals a judgment denying penalties and attorney fees; defendant answered the appeal claiming error in the denial of its exception of prescription. We affirm in part; and reverse and render in part.

Facts and Procedural Background

Claimant, Damian O’Quinn, suffered a work-related accident on September 1, 2009, while working as a motor man on an oil rig for defendant, Trinidad Drilling L.P., in Red River Parish, Louisiana. O’Quinn suffered a crush-type injury to his left hand and was taken to the emergency room at Willis Knighton-Pierremont in Shreveport. He was diagnosed with swelling and a contusion of his left wrist. An x-ray taken at that time did not show any breaks or fractures; however, he was told that the swelling could prevent an accurate picture. O’Quinn was scheduled by Willis Knighton Work Kare to follow up with Dr. Karl Bilderback, a board certified hand *488 and upper extremity orthopedic specialist. One week later, on September 9, 2009, O’Quinn saw Dr. Bilderback. According to Dr. Bilderback’s deposition and the notes written up from that visit, claimant reported no pain or discomfort as of that date and Dr. Bilderback observed no swelling in his hand or wrist. No x-ray were taken. O’Quinn was released to return to work with no limitations.
The week following the accident, O’Quinn was assigned to a light duty position in Trinidad’s yard. He did no work during this week but was paid his normal wages. After seeing Dr. Bilderback, O’Quinn returned to work on the rig with no restrictions. As a motor man, O’Quinn’s duties |2included assisting floor hands on the drill floor making up connections, pulling pipe out of and putting pipe into the drill hole, and assisting with the pipe on the rig floor. He was also responsible for maintaining the three diesel generators on the rig.
Two months later, on November 4, 2009, on one of his off days and on his own, O’Quinn went to see Dr. Scott McClelland, an orthopedic surgeon, in Monroe. O’Quinn reported to Dr. McClelland the details of his work accident and related that he was experiencing pain and discomfort in his left wrist while trying to do his job on the rig. X-rays showed a non-displaced capitate fracture (a fracture of one of the carpal bones) in O’Quinn’s left wrist. Dr. McClelland recommended a CT scan for further evaluation and treatment. Dr. McClelland told O’Quinn that “if this has not healed,, [you] may need an open reduction internal fixation or casting.” He reported that O’Quinn “wants to consider his options and will let me know his decision.”
O’Quinn related Dr. McClelland’s findings to Trinidad’s safety supervisor. O’Quinn testified that he told the supervisor that Dr. McClelland “discovered a fracture and my hand is broke.” He testified that the safety supervisor “pretty much told me that you got to go see (Dr.) Bilder-back.” O’Quinn went to Dr. Bilderback on November 13, 2009. A CT scan done on November 20, 2009, showed a fracture through the neck of claimant’s left capitate bone. At that point, O’Quinn was assigned to the yard on “light duty” driving a fork lift and performing other tasks that did not require him to use his left hand or wrist for approximately three weeks. |sWhile working the three weeks of light duty, O’Quinn kept his regular schedule as if he were on the rig and was paid his regular wages. On the rig as a motor man, he would work 84 hours one week (during which time he would sleep at the location) and would be off the following week. Thus, at the yard, O’Quinn slept at the location on his “on week” and was paid as if he were working full duty.
O’Quinn returned to work as a motor man on the rig without restrictions on December 21, 2009. Thereafter, O’Quinn worked full duty on the rig from December 2009 until July 21, 2010, when he resigned to accept a job with Hydradyne Hydraulics in West Monroe, Louisiana.[1]
In the spring of 2012, O’Quinn sought treatment from Dr. McClelland’s partner, Dr. Martin deGravelle, Jr., a hand and upper extremity surgeon. O’Quinn reported to Dr. deGravelle that he experienced pain in his left hand and wrist while using wrenches at work. After several appointments and an MRI, Dr. deGravelle opined that O’Quinn needed arthroscopic surgery *489 on his left wrist to repair ligament damage that he attributed to claimant’s work injury in September 2009.
On August 24, 2012, O’Quinn filed a Disputed Claim for Compensation arising out of his September 1, 2009, work accident at Trinidad. One of his allegations was that he received wages in lieu of compensation until January 2010, which served to interrupt the applicable prescriptive period for Supplemental Earnings Benefits (“SEB”). He also | ¿sought an award of penalties and attorney fees for defendant’s “denial of medical and choice of physician.” Causation of this initially ligament damage was disputed by defendant.
Asserting that O’Quinn’s claim was prescribed on its face, Trinidad filed an exception of prescription and a motion for summary judgment. A hearing on the exception and motion was held. The WCJ found that the wages O’Quinn received for the period of November 13-December 21, 2009, were in lieu of compensation; therefore, his claim for supplemental earnings was within the three years period provided by La. R.S. 23:2309(A)(2) and timely. Both the exception and motion were denied.
Trial was held on July 17, 2013. At this time, Trinidad agreed to pay for the surgery recommended by Dr. deGravelle and to reimburse O’Quinn for his medical expenses associated with his treatment with Drs. McClelland and deGravelle, leaving as the remaining issues, O’Quinn’s entitlement to SEB and the propriety of an award of attorney fees and penalties. Judgment was rendered by the WCJ, who found that O’Quinn was not entitled to SEB[2] or penalties and attorney fees. O’Quinn has appealed from that part of the WCJ’s judgment denying penalties and attorney fees. Trinidad has answered the appeal, urging that the WCJ erred in finding that O’Quinn’s SEB claim was not prescribed.

^Discussion

Penalties and Attorney Fees

According to claimant, the WCJ erred in failing to award penalties and attorney fees based upon the following: Trinidad required claimant to submit to treatment by its choice of orthopedic surgeons, Dr. Bilderback; and, Trinidad failed to comply with its statutory duty to inform him that he had the right to choose his own treating physician.
La. R.S. 23:1121 provides that an employee has the right to select one treating physician in any field or specialty. Aisola v. Beacon Hospital Management, Inc., LWCC, 13-1101 (La.App.4th Cir.04/02/14), 140 So.3d 71; Taylor v. Hanson North America, 12-0286 (La.App.lst Cir.01/09/13), 112 So.3d 272, writ denied, 13-0344 (La.04/01/13), 110 So.3d 586.
According to La. R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney fees for failure to consent to an employee's request to select a treating physician or change physicians when such consent is required by La. R.S. 23:1121. Aisola, supra; Garcia v. HICO, Inc., 12-748 (La.App.5th Cir.03/13/13), 113 So.3d 281; Youngblood v. Covenant Sec. SVC, L.L.C., 11-2382 (La.App.lst Cir.12/21/12), 112 So.3d 233, writ denied, 13-0200 (La.03/08/13), 109 So.3d 363.
The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ *490 compensation action is essentially a question of fact subject to the manifest error/clearly wrong standard of review. Authement v. Shappert Engineering, 02-1631 (La.j02/25/03)„; 840 So.2d 1181; Rainwater v. Tango Transport, 45,041 (La. App.2d Cir.03/10/10), 32 So.3d 1174; Garcia, supra.
In her oral reasons for judgment, the WCJ stated:
This Court is presented with a different set of facts and issues than those contemplated in Louisiana Revised Statute 23:1121 (B)(2)(b). In this case claimant was directed to Dr. Karl Bilderback. Later he chose treatment with Dr. Scott McClelland. The record is void of any evidence claimant ever advised defendants of his desire to select Dr. McClel-land as his choice of physician. The record is void of any evidence claimant ever requested treatment with his choice of physician, Dr. McClelland. And the record is void of evidence that defendants denied his choice of physician. Thus, claimant’s request for an award of penalties and attorney fees for defendant’s failure to approve his choice of physician is denied.
Having reviewed the record in its entirety, we find clear error in the WCJ’s determination that penalties and attorney fees were not proper in this case. It is undisputed that Trinidad did not inform O’Quinn of his right to choose his own treating physician; nonetheless, in November 2009, O’Quinn made his choice of Dr. McClelland as' his treating orthopedic doctor when he sought treatment from him, albeit on his own and without knowledge of the fact that he had the right to choose a treating physician. See, La. ' R.S. 23:1121(B)(2)(a), which provides that if an employee is treated by any physician to whom he is not specifically directed by the employer or insurer, that physician shall be regarded as his choice of treating physician. See also, Garcia, supra.
It is also undisputed that in November 2009, O’Quinn went to his employer and told the safety supervisor that he went to Dr. McClelland who “discovered a fracture and my hand is broke.” As noted above, Dr. McClelland at that point was to be regarded as O’Quinn’s choice of treating | yphysician. Contrary to the finding of the WCJ, the record is clear that O’Quinn advised his employer that he went to Dr. McClelland and that a specific treatment regimen was prescribed by this doctor. Implicitly, the employer was informed that Dr. McClelland was O’Quinn’s choice of physician. By insisting that O’Quinn instead return to Dr. Bilderback, the employer refused to accept Dr. McClelland as O’Quinn’s choice of physician. O’Quinn did not know he could choose a physician because the employer did not follow the law and inform him of that right.
Penalties and attorney fees were appropriate in this case. Again we note that Trinidad did not provide O’Quinn with notice of his right to choose a treating physician and when that choice became known to the employer, it ordered O’Quinn to return instead to the company’s physician. The redress currently provided by the Workers’ Compensation Act for an employee who is denied his right to an initial physician of his choice is set forth in La. R.S. 23:1121(B)(1).
Under LSA-R.S. 23:1201, we assess a penalty of $2,000. O’Quinn’s attorney had to file a complaint, try an exception and motion for summary judgment and try the case. However, the trial consisted of the evidence presented in those motions. Considering the record, including the appellate work, we award $5,000 in attorney fees.

*491
Viability of SEB Claim-Wages In Lieu of Compensation

In its answer to claimant’s appeal, Trinidad seeks a reversal of the WCJ’s denial of its exception of prescription/MSJ, both of which were based upon defendant’s contention that O’Quinn’s claim for SEB had | ^prescribed and therefore was untimely. According to defendant, this ruling is relevant in the event that, after his wrist surgery, claimant is unable to earn at least 90% of his pre-accident wages and thus entitled to file a claim for SEB. In ruling that the claim was timely, although it was prescribed on its face, the WCJ found that the work performed by O’Quinn while assigned to the yard was not commensurate with the wages he was paid by Trinidad. Thus, they constituted “wages in lieu of compensation” and served to interrupt the applicable prescriptive period.
La. R.S. 23:2309(A)(2) provides:
Where such payments [under the Workers’ Compensation Act] have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of [supplemental earnings] benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1), (1), (3) or (4).
 If the employee after his injury continues to receive wages or checks unspecified as to their purpose and he is not fully earning these wages, they will be treated as gratuitous payments in lieu of compensation and will interrupt prescription. Wex S. Malone and H. Alston Johnson, 14 Louisiana Civil Law Treatise, Workers’ ■ Compensation Law and Practice, § 384, pp. 371-2 (4th ed.2010). ‘Wages in lieu of compensation” are defined as unearned wages paid to an employee after an injury; if the employee actually earns the wages paid to him, they are not “wages in lieu of compensation” and do not interrupt prescription for workers’ compensation claims. City of Bossier City v. Colvin, 45,278 (La.App.2d Cir.05/19/10), 36 So.3d 1207; Armstrong v. Louisiana Federation of Teachers PEG/ FUSE 19Organizing Project, 45,125 (La.App.2d Cir.05/19/10), 36 So.3d 1134; Krieg v. Krieg Bros. Terrazzo Co., Inc., 93-1065 (La.Ap.3d Cir.09/28/94), 645 So.2d 661, writ denied, 95-0152. (La.03/30/95), 651 So.2d 837.
 The similarity or degree of difficulty of the duties performed by a claimant before and after the accident is relevant but not determinative of the issue of whether wages are earned or in lieu of compensation. Armstrong, supra; Heymann v. Dixie Leasing Corp., 250 So.2d 118 (La.App. 4th Cir.1971). Whether the wages were actually earned or in lieu of compensation depends upon the facts and circumstances of each case. Worley v. Town of Brusly, 07-0572 (La.App.1st Cir.12/21/07), 978 So.2d 406; Mauldin v. Town of Church Point, 05-1294 (La.App. 3d Cir.04/05/06), 925 So.2d 1269. As such, the WCJ’s determination that O’Quinn received “wages in lieu of compensation” after his accident is a factual determination subject to the manifest error/clearly wrong standard of review. Worley, supra; Ortis v. Ortco Contractors Inc., 00-1460 (La.App. 1st Cir.09/28/01), 809 So.2d 300.
At the hearing on the exception of prescription, O’Quinn testified that while he was working light duty in the yard (presumably during the period from November 13-December 21, 2009), because the days were shorter at that time of the year, he and the other guys worked daylight to dark. There were some days that they were allowed to leave work at 5:00 p.m. and go home. Claimant stated that while *492 he was on light duty assignment, there was more than one week when he did not work the full 84 hours, although he was paid as if he had worked an 84-hour shift on the rig. O’Quinn | ^testified that there was a big difference between the work he did on the rig and the work he did while on light duty in the yard. The work on the rig was very physical; there was never any down time, but the work was non-stop, for 12 or more hours a day. In the yard, most of the time he and the other workers sat around until a truck came in. Then, he would drive the forklift or help unload it using only his right hand. He also sometimes swept when needed, again using only his right hand. In his affidavit, O’Quinn noted that there were several other men with varying degrees of injury who were also assigned to the yard and who, like him, performed very little work. While claimant could not say “for a fact” what the other workers in the yard made, he stated that he was told that one guy working there at the same time as him made around $15 per hour. O’Quinn testified that his own hourly rate was closer to $20.
In light of the above evidence, we cannot say that the WCJ committed manifest error in finding that O’Quinn’s services performed for the period of time that he was on light duty in the yard were not commensurate with the wages he was paid, i.e., that claimant did not actually earn all of his pay for the period that he was assigned to light duty. See, Mauldin, supra; Ortis, supra; Cheatham v. Morrison, Inc., 469 So.2d 1219 (La.App. 1st Cir.1985). Therefore, there is no error in the WCJ’s ruling that O’Quinn’s claim for SEB, filed on August 24, 2012, was timely.

Conclusion

For the reasons set forth above, the judgment of the WCJ is affirmed in part, reversed and rendered in part.
|„IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of Damian O’Quinn and against defendant, Trinidad Drilling, LP, in the sum of $2,000 as penalties and $5,000 as attorney fees.
In all other respects the judgment of the trial court is affirmed. Costs are assessed to defendant, Trinidad Drilling, LP.

. O'Quinn felt that the new job at Hydradyne was a better opportunity for him; it allowed him to be closer to his wife and two young children and presented a greater future earning potential.

. As noted by the court in Desselle v. Dresser Industrial Valve, 96-374 (La.App. 3d Cir.02/05/97), 689 So.2d 549, an employee does not have a claim for SEB until such time as he becomes unable to earn at least 90% of his pre-accident wages. See also, Sensat v. Washington Group International, Inc., 12-654 (La.App. 3d Cir. 12/12/12), 106 So.3d 683.